IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KOREY JOE CONWAY,                                    CV. 07-6251-HA

        Plaintiff,                      OPINION AND ORDER

   v.

LINN COUNTY, LINN COUNTY SHERIFF'S DEPARTMENT, NURSE MARILYN STUTZMAN, NURSE SHERRY ECKSTEIN, NURSE ROBIN EUBANKS, DR. ROBERT TILLEY, CAPTAIN BARRY BAGGETT, SHERIFF TIM MUELLER, CAPTAIN JOE LARSEN,

        Defendants.

   Carl R. Neil
   Lindsay, Hart, Neil & Weigler, LLP
   1300 SW Fifth Avenue, Suite 3400
   Portland, Oregon 79201-5640

       Attorney for plaintiff

   Bruce L. Mowery
   280 Liberty Street, SE, Ste. 206
   Salem, OR 97301

       Attorney for defendants

///

1 - OPINION AND ORDER

HAGGERTY, District Judge.

Plaintiff, a former inmate at the Linn County Jail ("LCJ"), brings this action pursuant to 42 U.S.C. § 1983 alleging a denial of adequate medical care during his incarceration.[1] This case comes before the court on defendants' Motion for Summary Judgment [57], and plaintiff's Motion to Change Caption of the Litigation [76]. Plaintiff's Motion to Change Caption of the Litigation is granted, allowing the court to use the defendants' actual names in this Opinion. For the reasons set forth below, defendants' Motion for Summary Judgment [57] is granted.

### BACKGROUND

This case concerns plaintiff's incarceration at LCJ from May 17, 2007 through August 28, 2007, and the alleged denial of adequate medical care during that time. Tilley Deposition, p. 17. This was not plaintiff's first stay at LCJ; he has been incarcerated at LCJ more than 30 times since 1989. Tilley Declaration, pp. 2-5. Plaintiff first advised the medical personnel at LCJ that he was infected with the Hepatitis C Virus ("HCV") upon his April 18, 1995 admission into the Jail. *Id* at 3. During his numerous incarcerations at LCJ, plaintiff frequently

---

[1] Although the original *pro se* Complaint also alleges violations of the Americans with Disabilities Act and the Rehabilitation Act, plaintiff only opposes summary judgment as to the § 1983 claims against Linn County, Sherry Eckstein, Dr. Robert Tilley, and Captains Baggett and Larson. Memorandum in Opposition to Defendants' Motion for Summary Judgment [86].

2 - OPINION AND ORDER

informed the staff that he did not suffer from HCV, even after he had tested positive for the infection. Tilley Declaration, pp. 2-5.

Upon plaintiff's admission to LCJ in January 2000, he again informed the staff that he suffered from HCV. *Id* at 4. As a result, the staff physician at that time, Dr. Paul Young, ordered a blood screen. *Id.* That blood screen showed that plaintiff tested positive for HCV. Neil Declaration, Exhibit 6. The test also measured plaintiff's liver enzyme levels, revealing that his "ALT (also known as SGPT) was slightly elevated indicating possible liver damage. The AST (also known as SGOT) was normal. The HCV test was interpreted as consistent with recent or past HCV infection." *Id.* The elevated ALT score was important because changes in liver blood tests can indicate the first sign of deteriorating liver function as a result of an HCV infection. Neil Declaration, Exhibit 9.

Dr. Tilley became the medical director at LCJ in "[p]erhaps 2003. Approximately." Tilley Deposition, p. 10. When plaintiff was admitted to LCJ on December 16, 2004, he informed the staff that he did, in fact, suffer from HCV. Tilley Declaration, p. 4. Approximately one month later, on January 27, 2005, a blood screen was conducted based on the order of a nurse practitioner, not Dr. Tilley. Neil Declaration, Exhibit 12, p. 4. The test's liver enzyme results were consistent with the 2000 test, showing that

3 - OPINION AND ORDER

plaintiff's AST was within the normal range, but his ALT continued to be above normal. Tilley Declaration, p. 5.

When plaintiff was admitted to LCJ on May 17, 2007, he denied having HCV. *Id* at 5-6. According to plaintiff, sometime during his incarceration from May 2007 until August 2007, he saw Nurse Eckstein regarding a health problem not involving his HCV infection, but made a verbal request for a blood test to determine whether his liver enzyme scores had increased, thereby indicating progression of his HCV infection. Conway Declaration, p. 2. According to plaintiff, Eckstein replied, "'We don't do that here -- it's too expensive.'" *Id.* Plaintiff further alleges that when he informed Eckstein that his blood had twice been tested at LCJ in the past, she ordered a jailer to remove him. *Id.*

On June 28, 2007, plaintiff filled out an Inmate Request Form as follows:

> Years ago I had a blood draw here at LCJ, this blood draw was positive for Hep. C. Could I please get a copy of the results of that test? It is very important as I believe I am now in between stages 3-4 serious. Please help me in this matter and could I get an information packet on Hep. C and all the stages especially stage #4 and possible treatments?

Plaintiff's Exhibit 425 (corrected for spelling and punctuation).

Nurse Eckstein responded to plaintiff the following day:

> If you are ill -- the nurses would need to examine you -- then refer you on to see the dr. -- we do not treat Hep. C while in custody -- it requires a liver biopsy 1st. This is also not done while incarcerated at the county level.

4 - OPINION AND ORDER

*Id.* Dr. Tilley is unable to recall whether Eckstein consulted him before issuing this response to plaintiff. Tilley Deposition, p. 69.

On the same day that he received Eckstein's response (June 29, 2007) plaintiff filled out another Inmate Request Form:

> Can you please get me a copy of the results of a blood draw I took some years back -- it said I tested positive for Hep. C. I need a copy.

Plaintiff's Exhibit 425 (corrected for spelling).

On the same day, Nurse Eckstein responded to this request as follows:

> Your records of medical at Linn County Jail may be obtained through your attorney -- if you require testing, you can have it done at county health dep't on your release.

*Id.* Dr. Tilley is unable to recall whether Nurse Eckstein consulted with him before providing plaintiff with this response. Tilley Deposition, p. 70.

On July 11, 2007, plaintiff again issued another Inmate Request Form regarding his HCV infection:

> I did not receive a reply yet on the question I asked the doctor. If a person with Hep. C. reaches Stage 4 (the end stage), is there any way to stop liver failure other than a transplant? Also, is it wise to get a biopsy after 15-20 years with chronic Hep. C?

Plaintiff's Exhibit 429 (corrected for spelling and punctuation).

Dr. Tilley personally responded to this request for information the following day:

5 - OPINION AND ORDER

>    1. End stage liver disease would require biopsy confirmation and transplant. We won't be doing this for you -- you can do it after release.
>
>    2. Yes it is wise to get a biopsy done after 15-20 years of Hep. C. -- Again, this would be your responsibility upon release -- we don't do these.

*Id.*

On July 15, 2007, plaintiff filed another Inmate Grievance Form:

> I am being denied medical treatment for my liver disease Hep. C which is a very serious matter. The nursing staff and Dr. Tilley work under the sheriff and the jail commander. The nursing staff and D. Tilley have directly denied treatment to me.

Conway Declaration, Exhibit 2 (corrected for spelling and punctuation).

It appears this grievance was denied, prompting plaintiff to file a Grievance Appeal to Captain Baggett on July 16, 2007:

> This is in regards to grievance #07-0029 and your reply to it dated 7-16-07. It would seem you did not look into grievance #07-0029 as I have numerous kytes denying me any medical services for my liver disease Hep. C (chronic). This is a possible life-threatening disease. I have asked and asked for medical help in obtaining some type of results as to what stage I am at in this disease if I am at Stage 4 (end state) there is no stopping liver failure except through transplant. I want to find out before Stage 4, so I can start treatment if it is not too late -- the grievance is not resolved as I am still not getting medical treatment for Hep. C. at LCJ.

Conway Declaration, Exhibit 3 (corrected for spelling and punctuation).

Captain Baggett provided plaintiff with the following written response:

6 - OPINION AND ORDER

> I have reviewed your comments and find no merit to them. You are receiving medical care and medications that you refused to take. You have also talked with Dr. Nelson regarding your mental health concerns.
>
> I would suggest that you cooperate with our course of treatment for issues you have.

Baggett Declaration, p. 3.

Plaintiff next appealed to Jail Commander Larsen, claiming that he did not receive Baggett's response. *Id.* Larsen provided the following response:

> Below you will find the response given by Captain Baggett to your other grievances that deal with the same issues. I have also checked on your grievance[s] and find that they have no merit.

*Id.*

On August 17, 2007, plaintiff mailed a Level 3 Grievance Appeal, which he characterized as an emergency, to Sheriff Mueller. He indicated that his grievance had not yet been resolved "[b]ecause I am still not receiving medical treatment for my liver disease, not even to monitor how advanced it is." Conway Declaration, Exhibit 4 (corrected for spelling). According to Baggett, there is no record that this Level 3 Grievance Appeal was ever received by Sheriff Mueller. Baggett Declaration, p. 4.

Plaintiff was released from LCJ 11 days later on August 28, 2007, and was subsequently incarcerated by the Oregon Department of Corrections ("ODOC") in November of that year. Tilley Declaration, p. 9. ODOC medical personnel tested plaintiff's blood upon his admission. Consistent with the 2000 and 2005 blood tests,

7 - OPINION AND ORDER

the ODOC test showed an elevated ALT score, but the score was actually lower than the ALT score recorded at LCJ in 2005 thus bringing it closer to the normal range. *Id*; DEF 390.

Plaintiff filed this civil rights case on September 11, 2007 in which he argues that defendants' failure to monitor and/or treat his HCV infection constitutes a deliberate indifference to a serious medical need in violation of the Eighth Amendment.

## LEGAL STANDARDS

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and "identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation omitted).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th

Cir. 1987)). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Rather, he must come forward with sufficient evidence demonstrating to the court that there are genuine issues of material fact to be decided at trial. Fed. R. Civ. P. 56(e).

Plaintiff may not simply rely upon the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. The existence of a genuine issue of material fact may be demonstrated through the use of affidavits, depositions, answers to interrogatories, and admissions. *Id*; *see also* Fed. R. Civ. P. 56(c). If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal citation omitted). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Id.*

## DISCUSSION

I. **Eighth Amendment Standards**.

Plaintiff was a pre-conviction detainee at the LCJ at the time of the alleged constitutional deprivation, therefore the claim is properly brought pursuant to the Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). However, even though plaintiff's claim

9 - OPINION AND ORDER

of medical deprivation is grounded in due process, the legal test is identical to that of the Eighth Amendment. *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). In order to prevail, plaintiff must prove that defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay or intentionally interfere with medical treatment. *Lopez*, 203 F.3d at 1131; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.), *cert. denied*, 519 U.S. 1029 (1996).

The indifference to medical needs must, however, be substantial. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990). Inadequate treatment due to malpractice or even gross negligence, does not constitute an Eighth Amendment violation. *Id*; *Lopez*, 203 F.3d at 1131. Similarly, a difference of medical opinion between a prisoner and his treating physicians regarding the appropriate course of treatment does not amount to deliberate indifference. *Jackson*, 90 F.3d at 332. Rather, plaintiff must show that the course of treatment undertaken was medically unacceptable under the circumstances, and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health. *Id*.

///

10 - OPINION AND ORDER

## II. **Eighth Amendment Analysis**.

Plaintiff can establish that he suffers from a serious medical condition (HCV), and while it is true that plaintiff denied having HCV upon his admission to LCJ on May 17, 2007, he later informed LCJ staff that he suffered from this infection. In addition, he had a clear record of the infection at LCJ from his prior incarcerations at that facility. In this respect, defendants had sufficient reason to know that plaintiff suffered from a serious medical condition.

During plaintiff's May 17, 2007 incarceration, he claimed to have had his HCV infection for between 15-20 years, but there is no evidence that his health was deteriorating as a result. The evidence in the record shows that Dr. Tilley, having seen plaintiff on many occasions, was of the opinion that "there has been no significant decline in his condition. . . ." Tilley Deposition, pp. 74-75. Tilley looked for such indicators as "[p]ain in the right, upper quadrant, nausea . . . diarrhea, episodic fevers . . . jaundice, yellowing of the skin" and nausea. *Id* at 62. According to Tilley, plaintiff "reported no complaints or symptoms related to Hepatitis C." *Id* at 63. It was Dr. Tilley's conclusion that because plaintiff was asymptomatic, treatment for his HCV was unwarranted. Tilley Declaration, pp. 10-13.

In order to establish deliberate indifference in the Ninth Circuit, plaintiff must not only show a purposeful failure to

11 - OPINION AND ORDER

respond to his medical need, but also that the indifference caused him harm. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). Dr. Tilley's conclusion that plaintiff's HCV infection did not require treatment has proven to be sound precisely because plaintiff has not suffered any harm as the result of Tilley's decision not to treat him. When LCJ ordered plaintiff's blood tested in 2005, his ALT score was 73. Neil Declaration, Exhibit 7. Plaintiff's subsequent blood test at the Oregon Department of Corrections in November 2007 not only showed no material change in the relevant statistics, it also revealed that his ALT score had dropped to 58. DEF 390. Both scores are well within the mild to moderate elevation range of 40-200 (40 or less is normal). Supplemental Medical Information [85], Exhibit 2, p. 24. Like Dr. Tilley, the medical team at ODOC has concluded that plaintiff is asymptomatic and not an appropriate candidate for further evaluation for treatment with medication.

Because plaintiff is unable to show that his condition has worsened in the absence of blood testing or treatment during his incarceration at LCJ from May 17, 2007 through August 28, 2007, he cannot establish deliberate indifference.[2] Since plaintiff cannot establish sufficient facts at trial which would establish an Eighth

---

[2] It should be noted that while it is plaintiff's position that blood testing should be conducted every six months, he was only incarcerated within LCJ for three months and eleven days.

12 - OPINION AND ORDER

Amendment violation, summary judgment in defendants' favor is appropriate.

## **CONCLUSION**

Plaintiff's Motion to Change Caption of the Litigation [77] is GRANTED. Defendants' Motion for Summary Judgment [57] is also GRANTED, and plaintiff's claims are DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this   24th   day of November, 2008.

                                                   /s/ Ancer L. Haggerty
                                              Ancer L. Haggerty
                                              United States District Judge